FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 23, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STEPHANIE M.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 2:26-cv-158-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Stephanie M. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims she is unable to work due to physical and mental impairments.

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

Because the ALJ's evaluation of the consultative psychological evaluation and the light-work RFC are not supported by substantial evidence, this matter is remanded for further development of the record and re-evaluation of Plaintiff's limitations.

## I. Background

In April 2025, Plaintiff appeared before ALJ Henry Kramzyk for her Title 16 application for benefits.[2] At the hearing, Plaintiff stated that she was 54 years old, homeless, and "couch surfing," has a master's degree in education, and had not worked in five years because of her congestive heart failure, high blood pressure, asthma, and leg edema.[3] She testified that she experiences constant pain in her legs, feet, and chest; must sleep sitting up due to her heart condition; elevates her legs to help with her edema, but that elevating her legs hurts because her skin is stretched and sensitive in the back of her legs; is limited in lifting things above her head because it hurts her arms and chest; can walk at a slow pace for two minutes; can sit for

---

[2] Administrative Record (AR) 47–78, 258–66.

[3] AR 55–58.

five minutes before her legs go numb; and has difficulty using her left hand because her middle finger gets stuck.[4] She stated that she can dress herself at a slow pace and she sometimes needs assistance to get in and out of the shower; she attends church when she has someone able to take her; she uses a cane to help her walk; she uses either a motorized scooter or wheelchair at a grocery store; she can cook microwave dinners, tidy up, and sometimes wash dishes, but cannot vacuum or do laundry; and she reads books and watches television.[5] She testified that she takes medication for her high blood pressure, asthma, and depression, and that her medication makes her more tired and increases her need to urinate.[6] She shared that she saw a therapist

---

[4] AR 59–63.

[5] AR 64–69. On her Function Report, she reported that she has difficulty walking, standing, sitting, laying down, sleeping, using her hands, reaching, getting along with others, and concentrating. AR 297–304.

[6] AR 60–61.

but stopped when she became physically ill.[7] The ALJ acknowledged that photos of Plaintiff's legs, which show edema, were part of the record.[8]

After the hearing, the ALJ issued a decision finding Plaintiff not disabled.[9] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[10] As to the medical opinions, the ALJ:

- found the non-examining psychological advisors' opinions persuasive;
- commented that the non-examining medical consultants did not render an opinion as they found there was insufficient

---

[7] AR 58.

[8] AR 59.

[9] AR 16–45. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[10] AR 29. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

evidence given that Plaintiff did not attend the physical consultative examinations;

- found that Plaintiff's treating cardiologist, Conor Senecal, MD, did not offer an opinion as to Plaintiff's functional abilities; and
- found the opinions offered by Lynette Schultz, PsyD, who conducted a psychological consultative evaluation, not persuasive.[11]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 3, 2022, the application date.
- Step two: Plaintiff had the medically determinable severe impairments of chronic heart failure, hypertension, obesity, depression, bipolar disorder, and anxiety.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

[11] AR 36–37.

- RFC: Plaintiff had the RFC to perform light work except:

  [T]he claimant has the ability to lift, carry, push, pull up to 20 pounds occasionally and 10 pounds frequently, sit for a total of up to six hours a day, and stand and or walk for a total of up to six hours a day. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, and she can occasionally stoop, crouch, kneel and crawl. She is able to understand, remember and carry out simple instructions. She requires an occupation with occasional interaction with coworkers and supervisors. She requires an occupation with set routine procedures and instructions and occasional changes in a routine work setting. She requires an occupation where there is only occasional interaction with the public. She can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota. She can maintain regular attendance every puncture [sic] within customary tolerances and can perform activities within a schedule. She needs to avoid frequent exposure to concentrated fumes, odors, dust, gases, and pulmonary irritants. She can have no exposure to hazards such working [sic] in high exposed places and no working in proximity to mechanical and moving parts, and she can do no driving of vehicular equipment.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as housekeeping, cleaner; routing clerk; and order caller.[12]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[13] Plaintiff now appeals to district court.[14]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[15] Thus, the ALJ must articulate his findings and cite to supporting evidence in a way that permits the court to meaningfully review the ALJ's findings.[16]

---

[12] AR 19–40.

[13] AR 1–6.

[14] ECF No. 1.

[15] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[16] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[17] and such error impacted the nondisability determination.[18] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19]

---

565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[17] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[18] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[19] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

## III. Analysis

Plaintiff argues the ALJ erred when evaluating Dr. Schultz's consultative psychological opinion and by failing to provide an adequate evidentiary basis for the light-work RFC. In response, the Commissioner argues no error occurred and that the ALJ's decision is supported by substantial evidence. Because the ALJ's evaluation of Dr. Schultz's opinion and the light-work RFC are not supported by substantial evidence, this matter is remanded.

### A. Dr. Schultz's Opinion: Plaintiff establishes consequential error.

The parties disagree as to whether the ALJ provided adequate reasons for finding Dr. Schultz's social and adaptation limitations not

---

1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

persuasive. Plaintiff argues the ALJ erred by (1) inadequately evaluating the required supportability and consistency factors; (2) relying too heavily on broad generalizations of the medical record; (3) failing to recognize that the reviewing consultants agreed that Dr. Schultz's opinion was consistent with the objective medical evidence of record findings; and (4) overestimating Plaintiff's activities of daily living. As is explained below, the Court agrees the ALJ erred as to Dr. Schultz's marked adaptation opinion.

1. Standard

The ALJ must consider and articulate how persuasive he found each medical opinion, including whether the medical opinion was consistent with and supported by the record.[20] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant,

---

[20] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

and specialization.[21] Supportability and consistency are required factors.[22]

2. The evaluation and opinion

In December 2023, Dr. Schultz evaluated Plaintiff.[23] After reviewing two progress notes and conducting a clinical interview and mental status examination, Dr. Schultz diagnosed Plaintiff with major depressive disorder (recurrent, moderate, with moderate anxious distress), PTSD, and panic disorder. She opined that the "likelihood of Stephanie's mental health condition improving in the next 12 months is guarded as she reports and displays persistent, significant symptomatology."[24] While Dr. Schultz found that Plaintiff appeared able to complete simple, repetitive tasks, she also opined:

> [Plaintiff's] ability to follow and carry out complex instructions and respond adequately to changes in routine work settings would likely be markedly hindered by her persistent symptomatology. Social interaction would likely

---

[21] 20 C.F.R. § 416.920c(c)(1)–(5).

[22] *Id.* § 416.920c(b)(2).

[23] AR 562–65.

[24] AR 565.

> be inadequate. She would likely struggle markedly in adapting her routine in a workplace setting to incorporate new functions or processes that are outside her comfort level due to the aforementioned deficits.[25]

3. <u>The ALJ's findings, and evaluation thereof</u>

In the paragraph containing the ALJ's ultimate finding as to Dr. Schultz's opinions about Plaintiff's adaptation and social limitations, the ALJ did state in a conclusory manner that such opinions were "not supported by and/or consistent with the evidence" as "referenced above" by the ALJ.[26] This conclusory statement however cannot be read in isolation.

Prior portions of the ALJ's decision flesh out the basis for the ALJ's conclusory finding. For instance, on two pages preceding the

---

[25] AR 565. A "marked" limitation in an area of mental functioning means functioning is "seriously limited" rather than a moderate limitation evidenced by "fair" functioning or mild limitation evidenced by "slightly limited" functioning. 20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.00(F)(2)(b), (c), (d).

[26] AR 37.

ALJ's conclusory finding, the ALJ addressed Dr. Schultz's adaptation and social opinions. The ALJ wrote that he "was not persuaded" by these opinions because (1) they were based on Plaintiff's self-reports; (2) Dr. Schultz did not explain what "significant symptomology" she based her opinion on; (3) they were not supported by Plaintiff's daily living activities; (4) they were inconsistent with Plaintiff's ability to reside at different friends' houses; (5) there was no evidence of emergency room visits and/or inpatient hospitalization due to a mental impairment; (6) Plaintiff had not had mental health treatment during the relevant period; and (7) Plaintiff's mental health was treated with medication.[27]

As to the marked adaptation limitation, these reasons are not supported by substantial evidence. First, substantial evidence does not support the ALJ's finding that Dr. Schultz's opinion was based on Plaintiff's self-reports and inadequate explanation.[28] An opinion, such

---

[27] AR 34–35.

[28] *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical

as Dr. Schultz's opinion, which is based on a psychological examination, which included a clinical interview, a mental status examination, and a review of prior mental-health records, cannot be discounted as being based solely on the claimant's self-reports.[29] Dr. Schultz noted that she based her opinion not only on Plaintiff's reports but also her "displays [of] persistent, significant symptomatology."[30] She observed Plaintiff with slow processing and response times, dysphoric affect, and tearfulness.[31] Dr. Schultz also reviewed behavioral-health progress notes from February and March

---

source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

[29] *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (Psychologist's opinion was based on a clinical interview and mental status evaluation and partially relied on the claimant's self-reports; partial reliance on self-reported symptoms was not a valid reason to reject the opinion.).

[30] AR 565.

[31] AR 563.

2023.[32] The February 2023 note states that Plaintiff's homelessness and need for hygiene supplies was discussed.[33] The March 2023 note states that Plaintiff presented with a depressed mood with congruent affect, she reported feeling nauseated and in some pain, and her hygiene was adequate, eye contact was poor, speech pressured, speech content and thought content appropriate, concentration fair, memory intact, and insight and judgment appropriate.[34] She reported being homeless and couch surfing.[35] Given Dr. Schultz's review of the record and own similar observations, it is unclear why the ALJ found that Dr. Schultz based her opinion on Plaintiff's reported symptoms. Moreover, both reviewing consultants found Dr. Schultz's opinion "consistent w/objective [medical evidence of record] findings."[36]

---

[32] AR 643–45, 674–75.

[33] AR 674.

[34] AR 644–45.

[35] AR 644.

[36] AR 87, 96. The ALJ failed to meaningfully explain how the reviewing consultants, who determined that Plaintiff would only have occasional

Second, substantial evidence does not support the ALJ's finding that Dr. Schultz's marked adaptation opinion is inconsistent with Plaintiff's daily living activities.[37] None of the discussed activities, including attending church on occasion, preparing simple (microwave) meals, paying bills, watching television, and reading, were of such duration or nature that they are inconsistent with Plaintiff's testified-

---

difficulties adapting to change, offered a more detailed analysis when the Disability Determination Explanations merely summarize the reviewed records and then list the opined limitations. *Cf. Blakes*, 331 F.3d at 569 (requiring the ALJ to connect her conclusions to the supporting evidence).

[37] *See* 20 C.F.R. § 416.920c(c)(2) (comparing the medical opinion with the evidence from nonmedical sources); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding claimant's raising of two young children and maintaining a household inconsistent with the medical source's opinion).

to difficulties.[38] These activities are ones that Plaintiff can perform at her own pace. Also, as she advised Dr. Schultz, it is difficult and time consuming for her to perform personal hygiene.[39] Furthermore, given that Plaintiff is homeless, she does not have typical household bills that she must pay and her household tasks are limited to helping the homeowner with straightening up and sometimes dishes. Given the nature and scope of the tasks and daily activities performed by Plaintiff, such do not serve as substantial evidence to support the ALJ's finding that Dr. Schultz's adaptation limitations are inconsistent with the record.

Third, without more information regarding how and why Plaintiff had to move, substantial evidence does not support the ALJ's finding that Dr. Schultz's opinions are inconsistent with Plaintiff's ability to

---

[38] *Cf. Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (recognizing that the fact the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period").

[39] AR 564.

reside at different friends' houses. That Plaintiff moved to stay with different friends, or "couch surfed," does not necessarily indicate that she adequately adjusted to new settings. In fact, the opposite could be true. Moreover, a treating provider noted that Plaintiff is "relatively disorganized" and her lack of stable housing impacts her ability to follow through with recommended care.[40]

Fourth, it was not reasonable on this record for the ALJ to find Dr. Schultz's marked adaptation limitation inconsistent with Plaintiff's lack of emergency room visits and inpatient hospitalization. Dr. Schultz did not base her opinion on any emergent treatment sought or needed by Plaintiff but instead on the reported symptoms, including sadness, hopelessness, frustration, tearfulness, irritability, and agitation, and the observed dysphoric mood, tearfulness, and slow process and response times, which were similar with a reviewed record.[41] Moreover, the ALJ did not consider whether Plaintiff had good cause for not seeking emergent treatment or other mental-health

---

[40] AR 511.

[41] AR 563–64.

treatment, such as difficulties with transportation, concern about her safety, or due to the mental illness itself.[42]

Fifth, substantial evidence does not support the ALJ's finding that Dr. Schultz's opinion is inconsistent with medication being prescribed to help with Plaintiff's mental health. This record does not reflect sustained mental-health improvement,[43] and the ALJ did not

---

[42] *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."[42]); Soc. Sec. Rlg. 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").

[43] *See, e.g.*, AR 627–28 (coming in for refill of medications, still is homeless, is teary, told "that she simply needs to do something different if she wants to live"); AR 620–21 ("General she appears a

consider whether Plaintiff's mental impairments, finances, lack of reliable phone, or other good cause impacted her ability to consistently take mental-health medications.[44] Moreover, substantial evidence does

---

little more put together than she has in the past" and "she acknowledges some depression"). *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); Soc. Sec. Rlg. 18-3p: Titles II and XVI: Failure to Follow Prescribed Treatment (requiring the prescribed treatment to be expected to restore the individual's ability to engage in substantial gainful activity).

[44] AR 516–19 (mentioning that Plaintiff only has a phone that is dependent on Wi-Fi). *See Nguyen*, 100 F.3d at 1465 ("[T]he fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on

not support the ALJ's finding that he "accommodated the claimant's medication side effects including her testimony that she gets really tired . . . as the undersigned has limited her exertional capacity to light exertional level." As is discussed more below, there is no medical opinion or treatment record indicating that Plaintiff has the exertional capacity to perform light work.[45]

None of the reasons relied on by the ALJ to discount Dr. Schultz's adaptation opinion are supported by substantial evidence. However, as to Dr. Schultz's opinion that Plaintiff's "social interaction would likely be inadequate," substantial evidence supports the ALJ's finding that

---

which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate.").

[45] *See Lester v. Chater*, 81 F.3d 821, 829–30 (9th Cir. 1995) (noting that, for claimant with chronic pain syndrome and affective disorder, the consequences of the physical and mental impairments were inextricably linked and the Commissioner "erred as a matter of law in isolating the effects of [the claimant's] physical impairment from the effects of his mental impairment").

this vague opinion was only partially persuasive given that Plaintiff interacted well with Dr. Schultz, was cooperative at treating appointments, had several friends, and enjoyed going to the library and church when she had transportation.[46] The ALJ reasonably considered Dr. Shultz's social-interaction opinion against the social-interaction opinions of the reviewing psychological consultants, who opined that Plaintiff be limited to occasional interactions with the public and frequent interactions with co-workers and supervisors, and crafted an RFC limiting Plaintiff further: to occasional interactions with the public, co-workers, and supervisors.[47]

Although the ALJ reasonably considered Dr. Schultz's social-interaction opinion, remand is necessary for a new evaluation of Dr. Schultz's opinion as to Plaintiff's adaptation abilities. Given that almost three years have elapsed since Dr. Schultz's evaluation, an updated consultative psychological evaluation is to be ordered and more recent treatment records obtained.

---

[46] AR 27 (citing AR 562–84, 300–01, 66).

[47] AR 27, 88, 97.

**B. RFC: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to explain the evidentiary basis for the light-work allowance, highlighting that no medical source supported a limitation to light work. In response, the Commissioner maintains the ALJ accommodated Plaintiff's physical limitations and medication side-effects and reasonably assessed the light-work RFC.

1. Standard

The ALJ must translate and incorporate supported functional limitations, including those from clinical findings, into the RFC.[48] This involves considering the "relevant medical and other evidence."[49] Before making a non-disability determination, the Commissioner must develop the claimant's "complete medical history, including arranging

---

[48] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); Soc. Sec. Rlg. 96-8p: Assessing Residual Functional Capacity in Initial Claims.

[49] 20 C.F.R. § 416.945(a)(3).

for a consultative examination(s) if necessary, and making every reasonable effort" to obtain medical reports from treating providers.[50]

2. The ALJ's findings, and evaluation thereof

The RFC allows Plaintiff to perform light work with postural and environmental limitations.[51] The ALJ crafted this RFC with no medical-opinion guidance as to Plaintiff's exertional abilities. Two consultative examinations were set but Plaintiff did not appear at these examinations. It is unclear on the record why Plaintiff did not appear, and the ALJ did not solicit testimony on this point at the hearing.

In crafting the RFC, the ALJ discounted Plaintiff's reports of leg swelling and the need to elevate her legs throughout the day. The ALJ highlighted that during Plaintiff's appointment with Dr. John McCarthy in July 2024 she reported that her leg swelling had gone down somewhat and that she was doing better than when she first

---

[50] *Id.* § 416.945(a)(3) (internal citations omitted).

[51] AR 27. *See* 20 C.F.R. § 416.967 (defining physical exertion requirements).

presented.[52] However, notwithstanding Plaintiff's reports of some improvement during this appointment, Dr. McCarthy observed significant swelling with some pitting.[53] Thus, the reported improvement must be considered with the fact that Plaintiff's legs were still significantly swollen, and that Plaintiff had been observed with edema on prior occasions. For instance, in June 2024, Plaintiff was observed with bilateral woody edema with significantly enlarged legs with lymphedema present.[54] In June 2023, Plaintiff was observed with massive edema in her lower extremities.[55] In March 2023, it was noted that Plaintiff "continues to have 3+ bipedal edema."[56] In February 2023, Plaintiff told her treating provider that she has difficulty walking due to the size and swelling of her legs, which were observed with

---

[52] AR 32 (citing AR 616–17).

[53] AR 616–17.

[54] AR 628.

[55] AR 527.

[56] AR 505.

"significant swelling 3+ pitting."[57] Accordingly, during the relevant period, Plaintiff experienced significant swelling of her bilateral legs, and there is insufficient evidence of sustained reduced edema.

Further, there was an order placed by her treating provider in April 2023 for a motorized scooter and motorized chair to assist with ambulation.[58] Then in May 2023, Dr. McCarthy wrote, "Will work with her to get a scooter or some type of mobility device available to her. This will have to be done through physical therapy to get a better assessment and because of that [sic] significant problems that she has I think this will be best be done at St. Luke's."[59] Plaintiff again inquired about an electric scooter in June 2024.[60] That an assistive device was not again discussed at a later treatment appointment is not a reasonable reason to discount Plaintiff's reported exertional difficulties.

---

[57] AR 516.

[58] AR 499–500.

[59] AR 527.

[60] AR 620–21.

Substantial evidence does not support the ALJ's light-work RFC. This error is consequential, as under the medical-vocational guidelines, given Plaintiff's age when she applied for disability, a sedentary RFC would result in a finding of disability.[61]

Remand for a new evaluation is needed. To ensure proper evaluation of the evidence on remand,[62] a physical consultative examination is to be ordered.[63] In addition, the medical record is to be developed, and an opinion sought by one of her treating providers, which is to include an assessment as to Plaintiff's gait and whether she needs an assistive device to ambulate at work.[64] If Plaintiff does not appear for the consultative examination, the Commissioner is to obtain

---

[61] *See* 20 C.F.R. § 416.963(a) (defining "person closely approaching advanced age" to include ages 50–54); 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.12.

[62] *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

[63] *See* 20 C.F.R. § 416.917.

[64] *See id.* § 416.945(a)(3).

medical expert testimony as to Plaintiff's exertional abilities and functional limitations.[65]

## IV. Conclusion

Plaintiff established the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.[66]

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.
2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 12 and 14**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[65] *See* Hearing, Appeals, and Litigation Law Manual § 01250.034.

[66] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018).

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 23rd day of September 2026.

Edward F. Shea

EDWARD F. SHEA
Senior United States District Judge